```
 1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF KENTUCKY
 2                          LOUISVILLE DIVISION

 3
     UNITED STATES OF AMERICA,      )    Case No. 3:15-CR-58-TBR
 4                                  )
              Plaintiff,            )
 5                                  )
        VS.                         )
 6                                  )
     CYNTHIA ALLEN                  )
 7                                  )        November 8, 2017
              Defendant.            )        Louisville, Kentucky
 8

 9                              * * * * *
                         TRANSCRIPT OF SENTENCING
10                 BEFORE HONORABLE THOMAS B. RUSSELL
                     UNITED STATES DISTRICT JUDGE
11                              * * * * *

12   APPEARANCES:

13   For United States:        Joseph R. Ansari
                               Lettricea Jefferson-Webb
14                             U.S. Attorney's Office
                               717 West Broadway
15                             Louisville, KY 40202

16   For Defendant:            James A. Earhart
                               517 W. Ormsby Avenue
17                             Louisville, Kentucky  40203

18
         [Defendant present.]
19

20
                       April R. Dowell, RPR, RMR, CRR
21                         Official Court Reporter
                           232 U.S. Courthouse
22                         Louisville, KY 40202
                              (502) 625-3779
23
     Proceedings recorded by mechanical stenography, transcript
24   produced by computer.

25
```

1            (Begin proceedings in open court 12:06 p.m.)

2            DEPUTY CLERK:  United States of America versus

3  Cynthia Allen.  Case Number 3:15-CR-58-TBR.  We're here for a

4  sentencing, Your Honor.

5            THE COURT:  Who is present on behalf of the United

6  States?

7            MR. ANSARI:  Judge, Joe Ansari and Lettricea

8  Jefferson-Webb on behalf of the United States.

9            THE COURT:  And for Ms. Allen?

10           MR. EARHART:  Your Honor, Jim Earhart on behalf of

11  Ms. Allen who is present and standing to my right.  Good

12  morning, Your Honor.

13           THE COURT:  Good morning.  Have you and your client

14  received and reviewed a copy of the presentence investigation

15  report?

16           MR. EARHART:  Your Honor, we have received and

17  reviewed a copy of the presentence investigative report.  I

18  have reviewed that in consultation with Ms. Allen.  There are

19  no objections to the report as prepared.

20           THE COURT:  I know there's a C plea in this matter;

21  is that correct?

22           MR. EARHART:  It is, Your Honor.

23           THE COURT:  Let me ask a couple questions in that

24  regard.  It may not make any difference because you-all have a

25  C plea.  But in the C plea, I believe you-all stipulated that

1     the amount of intended loss was $144,362.88 and you stipulated
2     that the amount of restitution was $77,594.80.
3              In regard to the quantity of drugs involved, that
4     converted the marijuana to one kilogram to 2.5 kilograms.  And
5     then you also had an agreed sentence in this matter of 24
6     months and one day.
7              In the calculations -- in the guideline calculation,
8     when it gets to specific paragraph 30, it gives specific
9     characteristics of the offense involved, a loss exceeding
10    5,000 to $250,000, it was less than $250,000 and it was ten
11    levels.
12             Seems to me -- and the intended loss in this case
13    was 195,000, I think.  I don't think that 50 -- that 5,000 was
14    right.  Just a second.  Seems like to me you all stipulated to
15    a lesser amount.
16             MR. EARHART:  We did, Your Honor.
17             THE COURT:  And --
18             MR. ANSARI:  We did, Judge, and I can explain that.
19    At the time of sentencing, we had calculated 144,362.88 and
20    then -- actually, at the time of the plea that's what we
21    calculated.  Then at some point, we had noticed we overlooked
22    another -- there was a demand from one of the people involved
23    in the accident for 50,000.  That gets you the 190.
24             So we just said, Hey, we've already agreed to the
25    144, so we didn't try to push it up to the 190.

1      THE COURT: But the calculation is based on the --
2 based on the -- based on the 190. And if it was 144, it would
3 be -- I think it would just increase it by --
4      MR. ANSARI: By eight.
5      THE COURT: -- eight, I believe.
6      MR. EARHART: I believe that's correct, Your Honor.
7      THE COURT: And the other question I had -- so that
8 would -- the adjusted level would be 16. I understand in the
9 scheme of things, it doesn't make any difference. But the
10 adjusted then would be -- the other question I have -- that
11 would be 14 there. And then the specific offense
12 characteristics, paragraph 31, it's my understanding 2(b)1.1,
13 two point enhancement, should not be applied; is that correct
14 probation?
15      PROBATION OFFICER: Yes, Your Honor. I'm not sure
16 that they're aware of that.
17      THE COURT: Yeah. I think that's a miscalculation.
18 I think that's a duplication. So really I think under
19 healthcare fraud, if you use the calculations you agreed to
20 and the other -- and specific offense characteristics set
21 forth in paragraph 31 pursuant to 2(b)1.11(b)11(a)II, that
22 would -- that two points shouldn't have gone in so that the
23 enhancement would be 14; is that correct?
24      MR. ANSARI: Level 14, yes.
25      THE COURT: It would be 14 for that.

1             PROBATION OFFICER:  Yes.
2             THE COURT:  And then the -- let me see.  The other
3    one I had a question about.  Just a second.  And in regard to
4    conspiracy, it was found to be under 2(d) -- 1.1(b) --
5    paragraph 36, 2(d)1.1(a)(5), says they found the amount
6    involved was 11.61 kilograms, but you all stipulated to one
7    kilogram to 2.5 kilograms.  If you took that stipulation
8    instead of an adjusted level of 14, it would be an eight, I
9    believe.
10            I think it doesn't make any difference.
11   Essentially, if you did that they would still have two points
12   for -- 16.  Yeah.  They would still have two points for the
13   count in that regard.  Is that right?
14            PROBATION OFFICER:  Are you referring to units?
15            THE COURT:  Unit -- yeah, units -- for units.  Two
16   units.  And the highest one would be --
17            PROBATION OFFICER:  Yes, sir.
18            THE COURT:   -- 14 and then eight for the second unit
19   and eight for the -- eight -- total offense level eight, so
20   they each got a half, correct?
21            PROBATION OFFICER:  I believe it's capital D 14,
22   like you said, then count three, the drug, under
23   2(d)1.1(b)(8) --
24            THE COURT:  Yes.
25            PROBATION OFFICER:   -- and then count four would be

1   a base offense level of six.  They would each get a half.
2           THE COURT:  Each get a half.  We still have two
3   units but 14 plus the two would be 16, minus the three would
4   be 13.  He'd -- he'd be a -- should be a 13.1, so that range
5   would be 12 to 18 months.  I think that's -- according to your
6   plea agreement, that's what you all agreed to.  That's what
7   I'm going to go with here.  I think that's a fair thing to do.
8           I know you filed a presentence memorandum in this
9   matter, Mr. Earhart, but I assume you're not wanting -- this
10  is a C plea and you're not wanting to withdraw her plea in
11  that regard or --
12          MR. EARHART:  No, Your Honor.  We had filed a
13  sentencing memorandum asking on behalf of Ms. Allen from the
14  Court and I guess more importantly United States'
15  consideration whether or not it would be permissible for her
16  to serve this sentence on home incarceration.  I understand
17  the United States' position is that it's not, therefore --
18          THE COURT:  And that's a mandatory minimum statutory
19  penalty, you understand?
20          MR. EARHART:  Right. Of course, right.  They're the
21  only ones who can relieve the Court of that obligation.  They
22  filed a response indicating that they weren't willing to do
23  so.  You know, we recognize that Ms. Allen's been on probation
24  for five years on this case already and actually been
25  discharged probation in state court.

1              We recognize the statute requires a sentence of
2     24 months and limits the Court's discretion.  And I recognize
3     United States is objecting, so there's not much I can do about
4     it.
5              THE COURT:  Well, I'm going to -- anything further
6     on behalf of the United States?
7              MR. ANSARI:  No, sir.
8              THE COURT:  I'm going to accept your plea agreement
9     that you did enter into, the 11(c)(1)(C) plea agreement in
10    this matter which does give her some relief in this case.
11             Mr. Earhart, is there anything further you wish to
12    bring to the Court's attention or does Ms. Allen wish to say
13    anything?
14             MR. EARHART:  Do you want to say anything to the
15    Court?
16             THE DEFENDANT:  So did he deny the house arrest?
17             MR. EARHART:  I'm sorry?
18             THE DEFENDANT:  The house arrest.  Did he deny the
19    house arrest?
20             MR. EARHART:  I'm sorry.  I can't understand you.
21             THE DEFENDANT:  Did he deny the house arrest?
22             MR. EARHART:  That's what we just talked about.  He
23    can't do it.  The United States objected.  Go ahead.
24             THE DEFENDANT:  I wrote a letter for you.  I'm
25    sorry.

```
1              THE COURT:  That's all right.
2              THE DEFENDANT:  (Reading) Dear Judge Russell,
3    firstly, I would like to tell you that I appreciate the
4    opportunity and I'm highly grateful for giving me the time to
5    express my emotions and concerns.
6              I'm very apologetic for my wrong decisions and
7    wrongdoings in the past and take all responsibilities for my
8    action.  As time has passed, I've grown as a person, as a
9    mother, as a daughter, as a sister, and as a friend to me.  I
10   can agree with others including the detectives on this case
11   that I have been misguided, misled, and have had a bad judge
12   of character in the past.  I'm human and nobody is perfect.
13             I would like to -- I would like you to consider that
14   I have changed my life and hopefully realize that despite the
15   transgressions that led us to this point, that I am a very
16   respectful, responsible, and remorseful person who is begging
17   you for leniency for acceptance of spending my sentence on
18   home incarceration so that I'm able to provide for my four
19   children, as two of them have medical conditions and which my
20   fourth-month-old has been deem ed disabled and my
21   four-year-old was diagnosed with osteogenesis imperfecta at
22   birth and routinely sees an orthopedic specialist and
23   endocrinologist.  His disability hearing is set for this month
24   at this same courthouse.  He actually has an attorney working
25   that case for him.
```

1            I am a single mother and I get no support from my
2    children's fathers.  I am also a hard worker.  I went to
3    school and obtained a degree in medical billing and coding as
4    a specialist and I have an associate's in science.
5            I've had no prior history as I've always been an
6    honest, hardworking, tax-paying citizen.  As I took full
7    responsibility for my actions when this case was in state, I
8    would like to mention that I did all -- all the years on
9    probation, I never had one violation, no speeding tickets,
10   no -- or anything in that matter.
11           When this -- when this case came up, I was baffled
12   as I felt as I was being treated unethically.  I corroborated
13   as best as I could with the detectives as well as the
14   prosecutors on this case and as well as -- with me being a mom
15   at home with my kids.  I really don't have no help.  I don't
16   have much help at all with my four kids.
17           Let's see.  As I've said that I am guilty for the
18   record and I'd like to be -- I'd like it to be noted that I am
19   not guilty -- that I am guilty with being associated with
20   those in my past and also that I am guilty by taking these
21   charges in which have freed up other people and which I've --
22   I've been in fear for my life for a whole lot of things from
23   the past associated with this case.
24           And my codefendant was -- he's one of my child's
25   father, Terry Cotton.  I have a child with him.  And from the

1  very beginning, I was basically told that that's who you-all
2  wanted because of his past and what he's done.  And I had a
3  bad judgment of character and I got involved with him, and I
4  accept responsibility for it.  But I just -- I'm just pleading
5  to see what you can do to help me because I am trying to do
6  the best that I can and I want to stay out here to be able to
7  work and pay restitution and take care of my kids as well.
8              THE COURT:  Thank you, ma'am.  And the Court's not
9  unsympathetic to what you've said.  Unfortunately, one of the
10 charges to which you pled guilty, Congress has made a
11 statutory minimum sentence.  I can't go below that statutory
12 minimum of 24 months, and it's supposed to run consecutive to
13 whatever you receive on the other charges.
14             And in your plea agreement in this matter, I think
15 your party -- your attorney was able to negotiate with the
16 Government, and they are essentially not going to hold you --
17 not going to give any additional punishment for the other
18 charges.  They're not going to do that at all.  You could be
19 looking at additional 12 to 18 months if they -- I guess, if
20 they had not reached that agreement.  But there's nothing
21 that -- there's a statutory minimum, so my hands are tied on
22 the 24 months, ma'am.
23             I am going to accept your plea agreement in this
24 matter which was 24 months and 1 day, as I understand it.  The
25 Court having considered the advisory sentencing guidelines at

1  18 United States Code 3553(a) imposes the following sentence:
2  It is the judgment of the Court that the Defendant's committed
3  to the custody of Bureau of Prisons for a term of one day as
4  to each counts 1, 3 and 4 in the superseding indictment to be
5  served concurrently with each other and 24 months as to count
6  5, which shall be served consecutively to the terms imposed on
7  counts 1, 3 and 4. And for a total term of 24 months and
8  1 day in custody.
9  Upon release from imprisonment, the Defendant shall
10 be placed on supervised release for a term of two years as to
11 each of counts 1, 3, 4, and one year as to count 5 which will
12 run concurrently for a total term of two years. The Defendant
13 shall abide by the standard conditions of supervision adopted
14 by the Court as well as special conditions, a copy of which
15 has been provided to the Defendant and counsel.
16 These special conditions include certain financial
17 restrictions which will be explained by the United States
18 probation officer. It is further ordered that Defendant shall
19 pay restitution in the amount of $77,594.80 for which the
20 Defendant is jointly and severely liable with codefendants in
21 this case.
22 Any interest requirement on the imposed rest itution
23 is waived. Defendant shall pay a special penalty assessment
24 fee of a hundred dollars as to each count of conviction for a
25 total special penalty assessment of $400. Any financial

1    sanctions imposed shall be paid in accordance with the
2    schedule of payments page contained in this judgment.
3             Fine and cost of investigation, prosecution,
4    incarceration or supervision I waive due to Defendant's
5    inability to pay and the amount of restitution owed in this
6    case.
7             Having considered 18 United States Code 3553(a) and
8    the advisory guidelines which the Court has found to produce a
9    total offense level of 13 and a criminal history category of
10   one, the advisory guideline ranges are 12 to 18 months
11   custody, plus 24 months consecutive term, a fine of $3,000 to
12   $1,250,000 and 2 to 3 years supervised release.
13            Having accepted the Rule(c)(1)(C) in this matter,
14   the Court finds a sentence of 24 months and one day in custody
15   followed by two years supervised release and payment of
16   restitution falls within the -- is sufficient but not greater
17   than necessary to comply with the purposes set forth in
18   section 3553(a)(2) and more importantly in this case
19   unfortunately it satisfies the statutory provisions and
20   conforms with the plea agreement.  But for the fact that I
21   have no discretion in that, ma'am, I may have done differently
22   in this case.
23            Are there any objections to the sentence pronounced
24   or special conditions imposed all of which shall be
25   incorporated in the judgment on behalf of the United States?

```
 1                MR. ANSARI:  No, sir.
 2                THE COURT:  On behalf of the Defendant?
 3                MR. EARHART:  No, sir.
 4                THE COURT:  I recommend she be housed in a facility
 5    as close to her family.  On the terms of her plea agreement,
 6    she waived her right to appeal or collaterally attack this
 7    sentence except she retained any right to collaterally attack
 8    it for any good faith belief of prosecutorial misconduct or
 9    ineffective assistance of counsel.  Any objection to the
10    Defendant voluntarily surrendering?
11                MR. ANSARI:  No, sir.
12                THE COURT:  I'll set that voluntary surrender date
13    to be after January 1st of this -- of 2018, and we'll extend
14    that so she can't be -- won't have to do that till after that
15    date.
16                MR. EARHART:  Your Honor, there was one other
17    request.  I know it's simply a recommendation, but if you
18    would recommend to the Bureau of Prisons to consider her for
19    the early release program to the extent she otherwise so
20    qualifies, I believe that she would be eligible for halfway
21    house placement within a year of her discharge and potentially
22    home incarceration within six months of her ultimate
23    discharge.  I understand it's not binding on the BOP in any
24    way, but I'd ask the Court to --
25                THE COURT:  I have no objection to her being -- if
```

1   that opportunity is available to her and she so qualifies, I
2   have no objection to that.
3            MR. EARHART:  Thank you, Your Honor.
4            THE COURT:  Anything further?
5            MR. EARHART:  No, sir; not on behalf of Ms. Allen.
6            THE COURT:  Anything further, Mr. Ansari?
7            MR. ANSARI:  No, sir.
8            THE COURT:  Thank you all.  Thank you.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1   (proceedings concluded at.)

2                    C E R T I F I C A T E

3       I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

4   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

5


6
            s/April R. Dowell                 _5/9/18_____
7   Official Court Reporter, RMR, CRR          Date